UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-23393-CIV-ALTONAGA/TORRES

ALEXANDER FRAYMAN,

      Plaintiff,

v.

DOUGLAS ELLIMAN REALTY, LLC;
DOUGLAS ELLIMAN FLORIDA LLC;
DARIN TANSEY; RAPHAEL AVIGDOR;
GREGORY MIRMELLI; and MIAMI LUXURY
CONCIERGE LLC,

      Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff Alexander Frayman sues Defendants Douglas Elliman Realty, LLC; Douglas Elliman Florida LLC; Darin Tansey; Raphael Avigdor; Gregory Mirmelli; and Miami Luxury Concierge LLC, and alleges as follows.

## INTRODUCTION

1. In the midst of the COVID-19 pandemic, Plaintiff Alexander Frayman, a foreigner from Cyprus visiting family in the United States, was forced to stay longer in the United States than planned due to the risks associated with international travel and quarantine requirements associated with a return to Cyprus. Frayman sought the assistance of a high-end real-estate brokerage to find a luxury villa in South Florida for him and his family to be together in a safe environment. Douglas Elliman brokers marketed to Frayman—for $65,000 a month with a $10,000 security deposit via check and $300 cleaning fee upon end of rental term—what was represented

to be a first-class villa held to the highest standards and owned by a personal friend of one of the brokers. But when Frayman and his family arrived, they found themselves at a filthy house that had yet to be cleaned from the night before—and which due to the pandemic presented heightened health concerns. After insisting on either a full refund or a discount to the agreed price, the owner's representative and sister said that the money would be returned. Relying on this statement and Tansey's assurances that he would get a full refund, Frayman left the property and found other accommodations. Months later, Frayman has yet to see a return of any portion of the $65,000 he wired to Miami Luxury Concierge LLC and the brokers have now taken the position that they are "not responsible" for the return of Frayman's money. After consulting with counsel and conducting research, Frayman has since learned that the property owner, Gregory Mirmelli, had previously been sued for failing to refund moneys after a guest similarly discovered a filthy house unlike what was represented, and that the rental itself was illegal and Mirmelli had already been fined tens of thousands of dollars for engaging in illegal short-term rentals of the same property. In this action, Frayman sues the brokers and the property owner for violations of broker duties under section 475.278, Florida statutes, violations of the Florida Deceptive and Unfair Trade Practices Act, fraudulent inducement, fraud, professional malpractice, negligent misrepresentation, unjust enrichment, breach of contract, breach of rental agreement, promissory estoppel, conversion, rescission, and money had and received.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Alexander Frayman is a citizen of Cyprus and Russia.

3.      Defendant Douglas Elliman Realty, LLC ("DE Realty") is a New York limited liability company with its principal place of business in New York, New York. The members of DE Realty are DER Holdings LLC and DER Holdings II LLC. The sole member of both DER

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Holdings LLC and DER Holdings II LLC is New Valley LLC. The sole member of New Valley LLC is Vector Group Ltd. Vector Group Ltd. is a Delaware Corporation with its principal place of business in Miami, Florida. Accordingly, DE Realty is a citizen of Florida and Delaware.

4.      Defendant Douglas Elliman Florida LLC ("DE Florida") is a Florida limited liability company with its principal place of business in Miami Beach, Florida. The sole member of DE Florida is DE Realty. Accordingly, DE Florida is a citizen of Florida and Delaware.

5.      Defendant Darin Tansey is a citizen and resident of Florida and a resident of Miami-Dade County, Florida.

6.      Defendant Raphael Avigdor is a citizen of New York.

7.      Defendant Gregory Mirmelli is a citizen of Florida and a resident of Miami-Dade County, Florida.

8.      Defendant Miami Luxury Concierge LLC ("Miami Luxury") is a Florida limited liability company with its principal place of business in Miami Beach, Florida. Miremlli is Miami Luxury's sole member. Accordingly, Miami Luxury is a citizen of Florida.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between a citizen of a foreign state and citizens of a State where the mater in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court has general personal jurisdiction over Tansey and Mirmelli because their domicile is in Florida.

11.     This Court has general personal jurisdiction over DE Florida and Miami Luxury because Florida is their state of formation and where their principal places of business are located.

12.     This Court has specific personal jurisdiction over Avigdor because the causes of action alleged herein arise from Avigdor operating, conducting, engaging in, or carrying on a

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

business or business venture in this state or having an office or agency in this state; committing a tortious act within this state; breaching a contract in this state by failing to perform acts required by the contract to be performed in this state; and engaging in substantial and not isolated activity within this state. Furthermore, Frayman's claims arise out of or relate to Avigdor's contacts with this state, Avigdor purposefully availed himself of the privilege of conducting activities within this state, thus invoking the benefit of this state's laws, and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

13.    This Court has specific personal jurisdiction over DE Realty because the causes of action alleged herein arise from DE Realty (itself or through its agents) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act within this state; breaching a contract in this state by failing to perform acts required by the contract to be performed in this state; and engaging in substantial and not isolated activity within this state. Furthermore, Frayman's claims arise out of or relate to DE Realty's contacts with this state, DE Realty purposefully availed itself of the privilege of conducting activities within this state, thus invoking the benefit of this state's laws, and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this district and because all the defendants are subject to the Court's personal jurisdiction with respect to this action.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15.    In the midst of the COVID-19 pandemic, Frayman found himself in Philadelphia

4

visiting his 21-year-old son and 18-year-old daughter, who are both studying at universities in the United States.

16.     At this time, Frayman was unable to return to his home in Cyprus as Europe was largely closed for travel.

17.     In addition, due to heightened health risks associated with international travel and also a mandatory quarantine upon return to Cyprus, Frayman was concerned for the well-being of his other daughter, who is 12 years old and who was to return with him to Cyprus.

18.     After being in hotels from March 7 to March 17 in Princeton (where his daughter studies) and from March 17 to May 29 in Philadelphia (where his son studies), Frayman sought accommodations for himself and his family in Florida to be together with all of his children in a safe, clean, and secure environment and to enjoy time with his family while being largely isolated from third parties during the COVID-19 pandemic.

19.     It was important to Frayman to have access to fresh air and sea, and to be away from a city hotel such as the one in which Frayman was staying.

20.     Frayman also had to attend to certain personal matters in Miami, but he would not have traveled to Miami at this time regardless of these personal matters unless he had found adequate accommodations via the Defendants.

21.     Seeking to make the best of an unfortunate situation and keeping in mind his priorities outlined above, Frayman desired to rent an isolated, large, high-quality villa in Miami, Florida for himself and his family.

22.     Being from a foreign country, lacking specific knowledge of the rental market in the Miami, Florida area, and having a short window of time to find accommodations, Frayman sought to work with an experienced and knowledgeable broker who could help him find a property

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

that met his specifications.

23.     Frayman was introduced to DE Realty by his wife who had a contact in the real estate broker's Southampton office. The contact introduced Frayman's wife and subsequently Frayman to Avigdor, who is a licensed associate real estate broker (including in Florida) at DE Realty.

24.     DE Realty is the largest residential real estate brokerage firm in the New York metropolitan area and the fourth largest in the United States. DE Realty conducts residential real estate brokerage operations in South Florida through DE Florida. DE Realty and DE Florida generate revenue in the form of commissions and service fees.

25.     On the Douglas Elliman website, DE Realty and DE Florida feature luxury property listings for rent in South Florida. In connection with rentals, they boast that their "agents are relentless advocates for our clients" and that their "team is the top in the industry—they have access to the best and most reliable information and education, allowing them to expertly advise at every stage."

26.     On the Douglas Elliman website, Avigdor describes himself as being "[l]oyal and correct in all dealings." "His mission: To use my knowledge and experience to provide superior service while holding myself to the highest ethical standard."

27.     Avigdor also advises that "[i]t is integral to pick a truly professional broker to represent your interests and [he] has the track record to prove his efforts."

28.     Avigdor boasts a "knowledge of the market" that extends to Florida, noting his "license with Douglas Elliman's Lincoln Rd office and [his] team in place to handle all your South Florida Real Estate needs." Avigdor states that he is "sophisticated enough to handle any multi-million dollar property or interest" and is "capable of handling all your real estate needs from

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Southampton to South Beach."

29.     On May 19, 2020, Frayman contacted Avigdor to assist him in finding a rental that met his specifications in Miami. Frayman told Avigdor that he required a house with four to five bedrooms, significant garden territory of 30,000 to 50,000 square feet, a large swimming pool (with reference to a particular size), a gym, and a tennis court. He further told Avigdor that all in-house equipment should be "new, ready to use" and that a cleaning service was "highly desirable." Frayman advised that he could go as high as $30,000 to $40,000 for the rental, but he "expect[ed] value for this type of money."

30.     Avigdor, noting that he is licensed in Miami, agreed to assist Frayman. On May 20, 2020, Avigdor recommended Tansey, a member of his team, to Frayman as having local expertise and as someone able to find a property meeting Frayman's specifications. Avigdor advised that he conveyed Frayman's specifications to Tansey and Tansey was copied on several emails setting out Frayman's specifications.

31.     Tansey is one of DE Florida's realtor associates. On the Douglas Elliman website, Tansey is described as "focus[ing] on an exclusive inventory of luxury waterfront properties throughout South Florida with a keen focus in Miami Beach and its immediate surrounding areas." Tansey further touts his "curated Rolodex of high net worth clientele" and his excellence at "having the client experience some of the most desirable real estate available, all the while successful to match the perfect property to their needs."

32.     In his email to Frayman introducing and copying Tansey, Avigdor represented: "Darin Tansey is one of the top and premier agents at Douglas Elliman's Miami office. If there is anyone to find this gem, it is him. . . . While I know the parameters established by Alexander will be a tough find, I am confident that Darin will find something to fill the ticket."

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

33.     Tansey then replied: "I have lived in Miami Beach now for fifteen years now and have a strong sense of the market as well as nuisances [sic]."

34.     Tansey and Avigdor knew that Frayman was a foreigner and was relying on their stated expertise in the South Florida luxury-rental market. In multiple emails and text messages, Frayman made it clear to Tansey that both the cleanliness of the property and the legality of the rental were important to him.

35.     Frayman also told Tansey that he was traveling with his 12-year-old daughter, 21-year-old son, and son's 21-year-old friend.

36.     Tansey knew that Frayman's budget for a one-month rental was $40,000. But Tansey, who is compensated on a percentage commission basis, immediately sent Frayman links to properties that were well above this stated budget and not in line with his specifications. In a May 20 email Frayman wrote: "I looked through it and it is by far too massive! Please kindly stay within the figures I supplied to you in the original email." Tansey did send one property on Venetian Island for $30,000 per month (the "Venetian Property").

37.     After noting that the proposed properties were not consistent with his specifications or pricing, Frayman began using other search engines and had discussions with other brokers regarding other options. Acquaintances of Frayman and his son visited another property in the same area as the Venetian Property and were appalled at the quality. After not finding acceptable options, Frayman went back to Tansey.

38.     Seeking to convince Frayman that Tansey's properties were fit for his purposes and of the highest quality, Tansey noted that Frayman was not looking at "A+ properties" such as the ones that he was showing Frayman. Although Tansey recommended the Venetian Property, when Frayman asked Tansey if it would be of a same low quality as the one visited by his acquaintances,

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Tansey replied "yes" and insisted that he should only look at "A+ properties."

39.     One of the two original properties that Tansey presented to Frayman for a one-month rental was a luxury waterfront villa on Sunset Island located at 2120 Bay Avenue, Miami Beach, Florida 33140 (the "Property"). The Property is 6,400 square feet and sits on a 28,500 square-foot lot. It was listed for $85,000 per month plus a $20,000 security deposit and $500 cleaning fee. Although Frayman at first rejected it as being too expensive, Tansey continued to propose the Property after Frayman's rejection of the Venetian Property.

40.     As part of his presentation and to show off the supposed high-end quality of the Property, Tansey emailed and texted Frayman photographs and a video showcasing the Property.

41.     These photographs and video were highly-polished marketing materials showing a well-landscaped exterior.

42.     This turned out to not reflect the current condition, which was neglected with serious need for landscaping and other basic maintenance.

43.     Tansey described the Property as having a "charming exterior," which turned out to be far from the truth.

44.     Additionally, to induce Frayman to rent the Property rather than a different property within Frayman's stated budget, Tansey ensured Frayman that "[t]he owner Greg and his sister Sara [are] friends of mine" and that the owner maintained the Property at extremely high standards.

45.     Tansey omitted that the owner and his purported friend, Mirmelli, had recently been sued for a refund by a prior guest because the Property was not as depicted in promotional materials and was "unclean, in disarray and unfit for her family." *See Aurora de Rangel de Alba v. VR Holding Groups, LLC, et al.*, 2019-016548-CA-01 (Fla. 11th Cir. Ct.). Tansey further omitted that since the dispute with that prior guest, Mirmelli was now renting the Property through a new shell

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

company on the rental agreement.

46.     Frayman told Tansey on several occasions that it was critical to him that the rental be cleaned and disinfected due to the COVID-19 pandemic. Frayman relied on Tansey's alleged expertise to ensure that his rental would be fully compliant with all legal requirements both related to the COVID-19 pandemic and otherwise.

47.     Frayman initially suggested arriving at the Property on the evening of May 28, but Tansey said that would not work. Frayman then told Tansey he would take a charter flight the morning of May 29. Frayman made clear that "the place should be ready to have us" and that "we will come between 11-13:00 on the 29th."

48.     Tansey relayed this information by text message to "Andrea," who Tansey identified as a property manager in their text-message correspondence. Tansey also noted that "Sara" (Mirmelli's sister) would handle the check-in.

49.     In their text-message correspondence, Tansey stated: "Good evening Andrea and trusting all is well. Copied is Mr. Alexander Frayman who is a very special VIP guest and client staying at 2120 starting tomorrow 11:00am thru the end of June. . . .  Sara will be conducting the check-in  . . . . While there may be a slight crossover on checkout and maid service, please ensure Mr. Frayman receives of the utmost of care." Andrea replied, "Good evening Darin and Mr Frayman, Tomorrow I will meet Sarah at the property, and we will do everything to make the stay the best experience."

50.     The City of Miami-Beach prohibits short-term rentals (i.e., rentals of six months or less) of single-family homes as well as the advertising of such rentals. Tansey did not reveal that his promotion of the Property and the rental itself was illegal under the City of Miami Beach Code of Ordinances.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

51.     Frayman repeatedly alerted Tansey to his concern regarding legality and possible rental prohibitions. For example, he raised the issue in a May 23 email related to the Venetian Property. Frayman clearly made Tansey aware of his concerns regarding legality, and Tansey should have conducted the required due diligence regarding the legality of the rental of the Property.

52.     Around this time, Tansey orally advised Frayman that the use of a "guest agreement" would alleviate any legality issues.

53.     Furthermore, Tansey led Frayman to believe that he was marketing properties that were not subject to short-term rental bans. For example, in response to a question about the Venetian Property, Tansey assured Frayman in a May 25, 2020 email that the property was located in a part of the Venetian Islands where short-term rentals were not prohibited by any rules or regulations.

54.     Tansey did not reveal that the owner of the Property, Tansey's personal friend Mirmelli, had been fined for renting the Property on a short-term basis and was engaged in various legal battles with the City of Miami Beach.

55.     Tansey did not reveal that the owner of the Property, Mirmelli, had recently been sued for a refund by a prior guest because the Property was not as depicted in promotional materials and was "unclean, in disarray and unfit for her family."

56.     After a round of negotiation, through an email to Frayman, Tansey confirmed that the owner of the Property agreed to a rental term of May 29, 2020 through June 30, 2020 at a rental price of $65,000 plus a $10,000 security deposit and a $300 exit cleaning fee.

57.     Relying on Tansey's representations regarding the Property and its owner, Frayman agreed to exceed his stated budget and rent the Property for $65,000 (plus the $10,000 security

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

deposit and $300 exit cleaning fee).

58.     On May 27, 2020, Tansey sent Frayman a proposed Guest Agreement with Miami Luxury. The Guest Agreement listed Frayman as the "Guest" and Miami Luxury as the "Host."

59.     Even though Miami Luxury is listed as the Host, Miami Luxury in fact has no ownership interest in the Property. Mirmelli himself owns the Property. The Guest Agreement did not state that Mirmelli actually owned the Property, nor did it reference Mirmelli at all.

60.     Miami Luxury is in fact an alter ego or mere instrumentality of Mirmelli because Mirmelli dominates and controls Miami Luxury to such an extent that its independent existence is in fact nonexistent and Mirmelli formed and uses Miami Luxury as a shell to defraud or evade creditors.

61.     Miami Luxury has little to no assets, and Mirmelli used it as the "Host" to conceal his ownership of the Property and obligations for the rental.

62.     In his email of May 27 attaching the Guest Agreement, Tansey said: "Please see the attached 'Guest Agreement' as well as invoice; both simple and straight forward as you had requested . . . Once all is signed and wires sent, I will introduce you to the property manager Andrea."

63.     Relying on Tansey's representations, Frayman executed the Guest Agreement and emailed the signed agreement to Tansey.

64.     Tansey replied with an attachment of a scanned copy of the Guest Agreement countersigned by an unidentified person (likely Mirmelli) on behalf of Miami Luxury.

65.     A copy of the executed Guest Agreement is attached as Exhibit A.

66.     In all capitalized letters, the Guest Agreement states: "NO PARTIES ALLOWED."

67.     The Guest Agreement states that check-in time is 1:00 p.m. "unless the Guest has

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

made other arrangements with Host."

68.     As noted *supra*, Frayman asked to check in earlier and Tansey later confirmed in writing that Frayman and his family could check in at 11:00 a.m.  At no time did Tansey say that Frayman could not arrive at 11:00 a.m.

69.     On May 27, 2020, shortly after executing the Guest Agreement— and relying on Tansey and Avigdor's representations regarding their expertise, the Property, and its owner— Frayman wired $65,000 to Miami Luxury and arranged for a chartered flight for $26,200 for him, his daughter, his son, and his son's friend to fly from Philadelphia to Miami for their stay at the Property.

70.     Also on May 27, 2020, Avigdor confirmed in an email to Tansey and Frayman that the renting of the Property was a collective effort of the various Douglass Elliman offices, noting that it was a "great and successful effort."

71.     The night before Frayman's arrival, Tansey sent Frayman and the manager of the Property a text message confirming that Frayman would be staying at the Property "starting tomorrow 11:00am thru the end of June." Knowing of Frayman's specifications regarding cleanliness, Tansey also reminded the manager that "Mr. Frayman will be in need of your housekeeping staff."

72.     On May 28, 2020, Tansey informed Frayman by phone that a tenant decided to stay an additional night at the Property. After the call, Frayman texted Tansey saying, "I think there is zero chance that something can be cleaned properly before we arrive even if we arrive at 12:00! Consider that I specifically asked when to arrive."

73.     On May 29, 2020, at 11:25 a.m., Frayman and his family arrived at the Property.

74.     Expecting a five-star, "A+" villa, Frayman and his family found the Property to be

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

completely different than what Tansey described and presented in the photographs and video.

75.     Upon walking around the outside of the Property with his family, Frayman discovered that there were several high-end cars in the parking lot evidencing that the prior tenants had not left. Frayman also saw a tenant with a large bag and child walking around the Property and going back inside the house at one point, confirming that the Property had yet to be vacated for cleaning.

76.     The Property did not at all meet the high standards expected of a luxury rental. The Property had not been cleaned from the night before and it appeared that a party had recently taken place (e.g., half-drank liquor bottles and mixers sitting on an outside bar from the night before, partially filled trash bags on the ground, and a Starbucks cup filled with garbage).

77.     And unlike the photographs and video sent by Tansey, the swimming pool was dirty with plastic cups at the bottom, the outside furniture was run down, there were broken bulbs on the lamp posts, many outdoor fixtures appeared old and in need of repair, and the landscaping consisted of many dead spots in the grass, dead leaves on the trees, and dead bushes. This was not the "charming" exterior that Tansey represented and the Property was not in a condition consistent with the photographs or videos provided by Tansey.

78.     Even under the check-in time of 1:00 p.m. mentioned in the Guest Agreement (which was modified by the subsequent communications), it would be impossible to clean and disinfect the entire 5,778 square foot Property to the level required during the COVID-19 pandemic—especially given that, based on the cars in the parking lot and the number of empty cups and bottles, it is likely that more than four guests had stayed at the Property immediately prior to Frayman's arrival. At the time of arrival, the prior tenants were still in the house and the cleaning staff had only just arrived at the Property.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

79.     Upon arrival, Frayman texted Tansey and Andrea stating that the Property is an "extremely dirty place." Andrea responded that the pool cleaner would come only in the afternoon and, with respect to a reference by Frayman to broken glass, Andrea said she would have a handyman attend to it.

80.     Needless to say, the Property was not close to being in a condition to be handed over to a new tenant as Frayman feared when Tansey informed him at the last minute that the prior tenant was staying an additional night.

81.     Shortly thereafter, Tansey and Sarah Mirmelli ("Sarah") arrived. Frayman said, "I don't like it." Sarah responded, "Sorry."

82.     Seeing that the condition and quality of the Property had been misrepresented to him, given the unclean state the Property was in, and given the complete disregard to social distancing or disinfection despite the heightened health risks due to the COVID-19 pandemic, Frayman provided two alternatives: (i) reduce the rent to $55,000 with no security deposit or (ii) provide a full refund of the $65,000 he had paid.

83.     The potential reduction in rent would have been used to ensure that the house was properly cleaned as well as for temporary alternative accommodations during the cleaning if necessary. However, Sarah expressed no interest in any rent reduction.

84.     Sarah walked away from Frayman, made a call to an un-identified person, returned to Frayman, and said, "We will return your money." Frayman responded, "Thank you, good bye."

85.     Frayman relied on Sarah's undertaking as both the person responsible for check-in and also as sister of the owner as represented by Tansey. Sarah's actions displayed her authority or apparent authority to contractually bind the owner to return his funds.

86.     Tansey was present for this discussion, including Sarah's promise that the funds

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

would be returned to Frayman. Tansey said to Frayman, "I am on your side. I am sorry." Frayman told him that he expected the refund by Monday.

87.     Once again, Tansey omitted that Mirmelli had previously been sued for a refund and that the use of the shell company Miami Luxury on the Guest Agreement was a recent innovation by Mirmelli shortly following his dispute with the plaintiff in the prior lawsuit. Instead, in reference to the refund, Tansey assured Frayman, "I will take care of it."

88.     Relying on Sarah's promise on behalf of Miami Luxury and Mirmelli—as well as Tansey's assurance—Frayman left the Property.

89.     In a very stressful condition, he drove from hotel to hotel trying to find one that was open. Many hotels were closed at this time and Frayman, being a foreigner, was very distressed given that he had his 12-year-old daughter in the car and had no idea how long it would take to identify suitable, COVID-19 compliant accommodations.

90.     Ultimately, Frayman checked into the AC Hotels at 2912 Collins Ave—at great additional expense of $1,151.12 for three nights given the last-minute nature of the alternative rental.

91.     Frayman spent the next few days seeking a more permanent solution and ultimately, via a different broker, he and his family rented rooms at The Setai for a cost of $73,536. Although the accommodations were suitable, his goal of spending a month with his family in a semi-isolated environment at a rental house with a private property was not achieved.

92.     On May 29, 2020, in response to Tansey's request for wire details for the refund, Frayman emailed Tansey wire instructions and referred to the oral agreement reached in the presence of Sarah and Tansey at the Property with respect to the refund stating, "According to the agreement reached today in your presence, please find attached banking instructions for the return

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

of 65000 (sixty-five thousands) US Dollars in full. I expect that the money will arrive back to my account no later than 11 a.m. Zurich, Switzerland time, June 2nd, 2020."

93.     Tansey responded: "I have sent your wire instructions and demanded that the transmission happens today." At no time did Tansey refute the existence of an oral agreement reached with Sarah as the owner's representative to have the $65,000 refunded. Tansey assured Frayman that he would "continue to press them for the immediate refund until I know transmitted."

94.     The next day, Avigdor sent an email to Tansey acknowledging the problems with the Property. After seeing photographs of the true condition of the Property, Avigdor himself described the Property as "in general a house in disrepair." *See* Ex. B, Email from R. Avigdor dated May 29, 2020 ("I am truly disappointed to learn from our customer Alexander Frayman, that the condition of the home he rented through your local efforts was such a letdown for him. I don't think it was just an issue of it not being properly turned or cleaned upon his arrival. Alexander just sent me pictures of a dirty pool, dirty furniture (that probably needed a powerwashing) refuse left about. Party cups at the bottom of the pool, landscaping neglected, and in general a house in disrepair.").

95.     In the same email, Avigdor instructed Tansey to "please refund all the monies to his account immediately (the full $65,000) and lets [sic] please avoid an embarrassing law suit [sic]."

96.     On May 30, 2020, Tansey emailed Frayman asking, on behalf of "Wide Bay Luxury" (another Mirmelli-owned entity) for additional wiring information to complete the transaction by the following Monday, June 1, 2020. Frayman provided the requested information.

97.     After still not receiving any refund, on June 5, 2020, Frayman (through his counsel) sent Tansey, Avigdor, DE Realty, and DE Florida a demand for payment.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

98.     On June 11, 2020, backtracking from Avigdor's earlier representation, DE Realty's general counsel sent Frayman a letter stating it would not refund any money because it "is not responsible for its return."

99.     This is despite earlier texts from Avigdor to Frayman stating, "What happened to you was an injustice and I am incensed by it. . . . I am completely shocked that Darrin could put you in this house."

100.    Avigdor further informed Frayman that he wrote to the "owner" of Douglas Elliman, Howard Lorber, and stated, "Howard . . . we have an escalating problem that will soon be an embarrassing law suit for Douglas Elliman and would appreciate if you could give me a call to discuss . . .[Frayman] is demanding his money back and believes he has been fleeced by a landlord that Douglas Elliman introduced him to and this party's house situation has been in the news for similar problems in the past."

101.    To date, no money has been returned to Frayman.

102.    Frayman has also since learned that, in 2019, a prior guest sued Mirmelli because the Property was "unclean, in disarray and unfit for her family."

103.    Further, the rental was illegal because short-term rentals are prohibited on Sunset Island. *See* City of Miami Beach Code of Ordinances § 142-109.

104.    In fact, in addition to having been sued by prior guests, Mirmelli has had legal troubles with the City of Miami Beach due to illegal short-term rentals. In April 2018, Mirmelli was fined $25,000 for engaging in illegal short-term rentals. The City of Miami Beach takes a particularly dim view of short-term rentals of properties like the Property, with the ordinance requiring enhanced penalties for properties that exceed 5,000 square feet. *See* City of Miami Beach Code of Ordinances § 142-109.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

105.    The advertising and promotion of the Property by DE Realty, DE Florida, Avigdor, and Tansey was also illegal and subjects them to the imposition of fines by the City of Miami Beach. *See* City of Miami Beach Code of Ordinances § 142-109(c)(1)(d) (stating that an "advertisement that promotes the occupancy of a residence for less than six months and one day" violates the ordinance); *id.* § 142-905(b)(5) ("The advertisement, as defined in section 142-109(b), of single-family homes for a period of less than six months and one day shall not be permitted for single-family districts, and shall be a violation of this section 142-905(b)(5)."); *see also id.* § 142-109(b)(2) ("*Advertising* or *advertisement* shall mean any form of communication for marketing or used to encourage, persuade, or manipulate viewers, readers or listeners for the purpose of promoting . . . the occupancy of a residence for less than six months and one day, as provided herein, upon the premises, as may be viewed through various traditional media, including, but not limited to, newspaper, magazines, flyers, handbills, television commercial, radio advertisement, outdoor advertising, direct mail, blogs, websites or text messages.").

106.    Ironically, Mirmelli has actually sued the City of Miami Beach, in part, over its alleged failure to enforce its short-term rental ban against one of his competitors in the (illegal) short-term rental market. *See Mirmelli v. City of Miami Beach*, Case No. 2018-026112-CA-01 (Fla. 11th Cir. Ct.).

107.    The rental was also illegal under the Phase 1 Reopening Order and Emergency Measures to be Implemented by the City of Miami Beach (Revised May 22, 2020) Effective May 23, 2020, at 12:00 A.M (the "Order"). The Order ordered that all "commercial lodging establishments" (defined to include "short-term rentals") "shall remain fully **CLOSED** to transient guests and renters" (subject to inapplicable exceptions). The Order further required that commercial lodging establishments "shall refrain from accepting new transient guests or making

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

new reservations" until the expiration of the Order. This Order was in effect at all relevant times.

108.     DE Realty, DE Florida, Avigdor, and Tansey—who highlighted his personal friendship with Mirmelli—knew or should have known of these material issues, but in order to secure their economic gain via a commission (a) fraudulently did not disclose them or (b) performed no due diligence and negligently misrepresented the condition of the Property and the standards to which it was kept.

109.     As demonstrated by his prior legal disputes, Mirmelli had actual knowledge that short-term rentals are prohibited on Sunset Island. He nevertheless marketed the Property for a short-term rental.

110.     Mirmelli also had actual knowledge of the deceptive and misleading nature of the promotional materials for the Property as well the fact that the Property was poorly maintained.

111.     Frayman has hired the undersigned counsel to prosecute this action and is required to pay them reasonable attorneys' fees in connection with prosecuting this action.

112.     All conditions precedent to this action have been performed, waived, or otherwise satisfied.

## COUNT I
### VIOLATION OF DUTIES UNDER FLA. STAT. § 475.278
### (Against DE Realty, DE Florida, Tansey, and Avigdor)

113.     Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

114.     This is a count for damages arising from DE Realty, DE Florida, Tansey, and Avigdor's violations of the duties set forth in section 475.278, Florida statutes.

115.     DE Realty, DE Florida, Tansey, and Avigdor are brokers as defined in section 475.01(1)(a), Florida statutes.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

116.     DE Realty, DE Florida, Tansey, and Avigdor were single agents for Frayman, and as such represented Frayman as a fiduciary and owed Frayman duties including (1) dealing honestly and fairly, (2) loyalty, (3) full disclosure, (4) accounting for all funds, (5) skill, care, and diligence in the transaction, and (6) disclosing all known facts that materially affect the value of residential real property and are not readily observable.

117.     Indeed, Tansey told Frayman what he was working "on your behalf" and that he was "brokering the deal for you."

118.     Alternatively, DE Realty, DE Florida, Tansey, and Avigdor were at least transaction brokers, and as such owed Frayman duties including (1) dealing honestly and fairly, (2) accounting for all funds, (3) using skill, care, and diligence in the transaction, and (4) disclosing all known facts that materially affect the value of residential real property and are not readily observable to the buyer.

119.     DE Realty, DE Florida, Tansey, and Avigdor breached their statutory duties to Frayman by illegally advertising an illegal rental to him, failing to disclose that a short-term rental for the Property was illegal, falsely advising that a "guest agreement" would render the rental legal and otherwise leading Frayman to believe that they were marketing properties that could legally be rented on a short-term basis, failing to disclose that Mirmelli had been fined for illegally renting the Property as a short-term rental, failing to disclose that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, failing to disclose that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and failing to disclose that the Property was unclean, in disarray, and unfit for a family.

120.     The undisclosed facts listed *supra* materially affected the value of the Property and were not readily-observable to Frayman.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

121.     DE Realty, DE Florida, Tansey, and Avigdor either knew, or using the requisite skill, care, and diligence should have known, the undisclosed facts listed *supra*.

122.     DE Realty, DE Florida, Tansey, and Avigdor further breached their statutory duties to Frayman by misrepresenting the condition the Property.

123.     Had DE Realty, DE Florida, Tansey, and Avigdor not illegally advertised an illegal rental to Frayman; had DE Realty, DE Florida, Tansey, and Avigdor not misrepresented the legality of the rental; had DE Realty, DE Florida, Tansey, and Avigdor not misrepresented the condition of the Property to Frayman; or had Realty, DE Florida, Tansey, and Avigdor disclosed (or used skill, care, and diligence to discover and disclose) any of the undisclosed facts listed *supra* to Frayman, Frayman would not have agreed to rent the Property.

124.     Frayman detrimentally relied on the representations and omissions of DE Realty, DE Florida, Tansey, and Avigdor.

125.     As a direct and proximate cause of DE Realty, DE Florida, Tansey, and Avigdor's breaches of their duties to Frayman, Frayman has been damaged in an amount to be proven at trial.

126.     DE Realty, DE Florida, Tansey, and Avigdor are liable for Frayman's damages, including but not limited to expenses for flying with his family from Philadelphia to Miami, the unreturned $65,000 rental payment, and the additional expenses of securing last-minute alternative accommodations.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants DE Realty, DE Florida, Tansey, and Avigdor awarding Plaintiff's actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

**COUNT II**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Against Mirmelli and Miami Luxury)**

127.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

128.    This is a count for damages, declaratory relief, and injunctive relief for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

129.    At all times material, Mirmelli and Miami Luxury conducted trade or commerce within the meaning of section 501.203, Florida statutes.

130.    Mirmelli and Miami Luxury engaged in unconscionable, unfair, or deceptive acts or practices by illegally advertising and renting out an illegal rental to Frayman.

131.    Mirmelli and Miami Luxury engaged in further unconscionable, unfair, or deceptive acts or practices by misrepresenting the true condition of the Property and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

132.    Mirmelli and Miami Luxury engaged in further unconscionable, unfair, or deceptive acts or practices by seeking to illegally rent the Property to Frayman and have him execute an illegal contract.

133.    Indeed, because the rental and rental contract were illegal, the value of the rental was worthless.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

134.    The misrepresentation, concealment, and omissions of material facts and the other unconscionable, unfair, or deceptive acts or practices alleged in the preceding paragraphs occurred in connection with Mirmelli and Miami Luxury's trade or commerce in Florida.

135.    As a direct and proximate result of Mirmelli and Miami Luxury's unconscionable, unfair, or deceptive acts or practices in violation of FDUTPA, Frayman has been damaged in an amount to be proven at trial.

136.    Mirmelli and Miami Luxury are liable for Frayman's damages, including but not limited to expenses for flying with his family from Philadelphia to Miami, the unreturned $65,000 rental payment, and the additional expenses of securing last-minute alternative accommodations (plus additional expenses of taxis, WiFi rentals, and other incidentals).

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's actual damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest; issuing a declaration that Defendants Mirmelli and Miami Luxury's acts and practices alleged herein violated FDUTPA; and enjoining Defendants Mirmelli and Miami Luxury from continuing to violate FDUTPA through the acts and practices alleged herein.

### COUNT III
### FRAUDULENT INDUCEMENT
### (Against All Defendants)

137.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

138.    This is a count for damages for fraudulent inducement.

139.    Defendants made false statements of material facts about the rental, the Property, and the owner and Defendants knew or should have known of the falsity of their statements.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

140.    Defendants also omitted or failed to disclose materials facts about the rental, the Property, and the owner that they had a duty to disclose.

141.    As more specifically alleged above, Defendants Mirmelli and Miami Luxury's material misrepresentations and omissions include misrepresenting, through Tansey, the true condition of the Property and the legality of the rental, and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

142.    As more specifically alleged above, Defendants Mirmelli and Miami Luxury's material misrepresentations and omissions include misrepresenting, through Sarah, the intention of Mirmelli and Miami Luxury to refund Frayman's money if he left the Property.

143.    As more specifically alleged above, Defendants DE Realty, DE Florida, Avigdor, and Tansey's material misrepresentations and omissions include misrepresenting the true condition of the Property and the legality of the rental and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

144.    Defendants intended for their representations and omissions to induce Frayman to rely and act upon them.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

145.     Frayman suffered damages in an amount to be proven at trial by acting in justifiable reliance on Defendants' material misrepresentations and omissions.

146.     In particular, Frayman justifiably relied on Defendants' material misrepresentations and omissions in entering into the Guest Agreement, paying for flight tickets from Philadelphia to Miami, wiring $65,000 to Miami Luxury, and leaving the Property to find alternative last-minute accommodations at extra expense.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants DE Realty, DE Florida, Tansey, Avigdor, Mirmelli, and Miami Luxury awarding Plaintiff's actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

## COUNT IV
## FRAUD
### (Against All Defendants)

147.     Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

148.     This is a count for damages for fraud.

149.     Defendants made false statements of material facts about the rental, the Property, and the owner and Defendants knew or should have known of the falsity of their statements.

150.     Defendants also omitted or failed to disclose materials facts about the rental, the Property, and the owner that they had a duty to disclose.

151.     As more specifically alleged above, Defendants Mirmelli and Miami Luxury's material misrepresentations and omissions include misrepresenting, through Tansey, the true condition of the Property and the legality of the rental, and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

152.    As more specifically alleged above, Defendants Mirmelli and Miami Luxury's material misrepresentations and omissions include misrepresenting, through Sarah, the intention of Mirmelli and Miami Luxury to refund Frayman's money if he left the Property.

153.    As more specifically alleged above, Defendants DE Realty, DE Florida, Avigdor, and Tansey's material misrepresentations and omissions include misrepresenting the true condition of the Property and the legality of the rental and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

154.    Defendants intended for their representations and omissions to induce Frayman to rely and act upon them.

155.    Frayman suffered damages in an amount to be proven at trial by acting in justifiable reliance on Defendants' material misrepresentations and omissions.

156.    In particular, Frayman justifiably relied on Defendants' material misrepresentations and omissions in entering into the Guest Agreement, paying for flight tickets from Philadelphia to Miami, wiring $65,000 to Miami Luxury, and leaving the Property to find alternative last-minute accommodations at extra expense.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants DE Realty, DE Florida, Tansey, Avigdor, Mirmelli, and Miami Luxury awarding Plaintiff's actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

**COUNT V**
**PROFESSIONAL MALPRACTICE**
**(Against DE Realty, DE Florida, Tansey, and Avigdor)**

157.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

158.    This is a count for damages for professional malpractice.

159.    As brokers as defined in section 475.01(1)(a), DE Realty, DE Florida, Tansey, and Avigdor rendered a professional service to Frayman and are professionals under Florida law.

160.    DE Realty, DE Florida, Tansey, and Avigdor also held themselves out to Frayman as having specialized knowledge and skill with respect to brokering luxury rental properties in South Florida.

161.    DE Realty, DE Florida, Tansey, and Avigdor had a duty to exercise a degree of care and skill in brokering a rental property for Frayman.

162.    DE Realty, DE Florida, Tansey, and Avigdor neglected their reasonable duties of care in the course of a professional relationship by promoting, recommending, and brokering the rental of a Property that was illegal, subject to prior litigation both by prior guests and the City of Miami Beach, rented out in the Guest Agreement through the owner's shell company rather than the owner of record, and in poor condition.

163.    Such negligence proximately caused Frayman damages in an amount to be proven at trial.

28

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants DE Realty, DE Florida, Tansey, and Avigdor awarding Plaintiff's actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
### (Against DE Realty, DE Florida, Tansey, and Avigdor)

164.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

165.    This is a count for damages for negligent misrepresentations and omissions made by Defendants DE Realty, DE Florida, Tansey, and Avigdor.

166.    DE Realty, DE Florida, Tansey, and Avigdor made false statements of material facts about the rental, the Property, and the owner.

167.    DE Realty, DE Florida, Tansey, and Avigdor also omitted or failed to disclose materials facts about the rental, the Property, and the owner that they had a duty to disclose.

168.    As more specifically alleged above, DE Realty, DE Florida, Tansey, and Avigdor's material misrepresentations and omissions include misrepresenting the true condition of the Property and the legality of the rental and failing to disclose that a short-term rental for the Property was illegal, that Mirmelli had been fined for illegally renting the Property as a short-term rental, that Mirmelli had been sued by a guest for a refund because the Property was not kept in the represented condition, that Mirmelli started using Miami Luxury to rent out the Property following his dispute with the prior plaintiff, and that the Property was unclean, in disarray, and unfit for a family.

169.    DE Realty, DE Florida, Tansey, and Avigdor made these material

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

misrepresentations and omissions in the course of their business, profession, or employment in a transaction in which they had a pecuniary interest.

170.     In the exercise of reasonable care under the circumstances, DE Realty, DE Florida, Tansey, and Avigdor were negligent in making these material misrepresentations and omissions because the representations were made without knowledge of their truth or falsity and/or they have known or ascertained that the misrepresentations were false and/or they should have discovered the material undisclosed facts.

171.     DE Realty, DE Florida, Tansey, and Avigdor intended for their representations and omissions to induce Frayman to rely and act upon them.

172.     Frayman suffered damages in an amount to be proven at trial by acting in justifiable reliance on the material misrepresentations and omissions by DE Realty, DE Florida, Tansey, and Avigdor.

173.     In particular, Frayman justifiably relied on material misrepresentations and omissions of DE Realty, DE Florida, Tansey, and Avigdor by entering into the Guest Agreement, paying for flight tickets from Philadelphia to Miami, and wiring $65,000 to Miami Luxury.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants DE Realty, DE Florida, Tansey, and Avigdor awarding Plaintiff's actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

## COUNT VII
## CONVERSION
### (Against Mirmelli and Miami Luxury)

174.     Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

175.    This is a count for damages for conversion of specifically identifiable funds by Mirmelli and Miami Luxury.

176.    Mirmelli and Miami Luxury converted to their own use the $65,000 wired by Plaintiff Frayman that was then the property of Frayman.

177.    Mirmelli and Miami Luxury have wrongfully deprived Frayman of his property, the $65,000 wired by Frayman.

178.    Having a right to possession of the $65,000 in funds, Frayman made a demand to Mirmelli and Miami Luxury for the return of such funds.

179.    Mirmelli and Miami Luxury have refused or failed to relinquish such funds to Frayman.

180.    Mirmelli and Miami Luxury intend to permanently deprive Frayman of his $65,000 in funds.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's actual, compensatory, consequential, and punitive damages; disgorgement or restitution of Frayman's $65,000; costs; and pre- and post-judgment interest.

## COUNT VIII
## UNJUST ENRICHMENT
### (Against All Defendants)

181.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

182.    This is a count for unjust enrichment.

183.    Frayman conferred a direct benefit on Mirmelli and Miami Luxury by paying them $65,000.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

184.    Frayman conferred a direct benefit on DE Realty, DE Florida, Tansey, and Avigdor by paying $65,000 to Mirmelli and Miami Luxury, from which DE Realty, DE Florida, Tansey, and Avigdor were paid a percentage commission.

185.    Defendants had knowledge of, accepted, and retained these benefits.

186.    The Guest Agreement between Frayman and Miami Luxury is void because it is subject to rescission and Frayman has given notice of rescission, Miami Luxury intentionally concealed the true condition of the Property and the illegality of the rental, Frayman entered into the Guest Agreement based on his unilateral mistake that the rental was legal, the Guest Agreement is void as illegal and/or because it could not be performed without violating the law, and/or Miami Luxury cannot be allowed to profit from an illegal transaction induced by fraud.

187.    Under the circumstances, it would be unjust and inequitable to allow Defendants to retain these benefits without paying the value thereof to Plaintiff.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants awarding Plaintiff's general, actual, compensatory, consequential, and punitive damages; restitution of amounts by which Defendants have been unjustly enriched; costs; and pre- and post-judgment interest.

## COUNT IX
## BREACH OF RENTAL AGREEMENT
### (Against Mirmelli and Miami Luxury)

188.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

189.    This is a count for damages arising from breaches of a rental agreement by Mirmelli and Miami Luxury.

190.    The Guest Agreement was a rental agreement between Frayman and Miami

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Luxury, and by extension, Mirmelli.

191.    The Guest Agreement imposed an obligation of good faith in its performance. *See* Fla. Stat. § 83.44.

192.    The Guest Agreement contained an implied warranty that the premises would meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

193.    Miami Luxury and Mirmelli breached the Guest Agreement by failing to provide a legal rental, acting in bad faith, failing to have the Property cleaned and ready at the agreed upon check-in time of 11:00 a.m., and failing to maintain the Property to ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

194.    Frayman has been damaged by Mirmelli and Miami Luxury's breaches in an amount to be proven at trial.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's general, actual, compensatory, consequential, and punitive damages; reasonable attorneys' fees pursuant to Fla. Stat. § 83.48; costs; and pre- and post-judgment interest.

## COUNT X
## BREACH OF CONTRACT
### (Against Mirmelli and Miami Luxury)

195.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

196.    This is a count for damages arising from breach of contract by Mirmelli and Miami Luxury.

197.    Frayman agreed with Mirmelli and Miami Luxury that he would be refunded his

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

$65,000 if he left the Property.

198.     Frayman left the Property.

199.     Mirmelli and Miami Luxury breached the agreement by failing to refund Frayman his $65,000.

200.     Frayman has been damaged by Mirmelli and Miami Luxury's breach in an amount to be proven at trial.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's general, actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

## COUNT XI
## RESCISSION
### (Against Miami Luxury)

201.     Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

202.     This is a count for rescission of the Guest Agreement between Frayman and Miami Luxury.

203.     Rescission is warranted because Miami Luxury procured Frayman's agreement to the Guest Agreement through fraudulently misrepresenting the true condition of the Property and the legality of the rental.

204.     Rescission is warranted because Miami Luxury intentionally concealed the true condition of the Property and the illegality of the rental.

205.     Rescission is warranted because Frayman agreed to the Guest Agreement based on his unilateral mistake that the rental was legal.

206.     Rescission is warranted because the Guest Agreement is void as illegal and/or

34

because it could not be performed without violating the law.

207.    Rescission is warranted because Miami Luxury cannot be allowed to profit from an illegal transaction induced by fraud.

208.    Frayman has notified Miami Luxury of the rescission.

209.    Based on the rescission, the parties must be restored to the status quo prior to entering into the Guest Agreement. As such, Frayman is entitled to return of his $65,000 rental payment.

210.    Frayman has no adequate remedy at law.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendant Miami Luxury declaring the Guest Agreement void and restoring the parties to the status quo, including awarding Frayman return of his $65,000 rental payment together with an award of Frayman's costs and pre- and post-judgment interest.

## COUNT XII
## MONEY HAD AND RECEIVED
### (Against Mirmelli and Miami Luxury)

211.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

212.    This is a count for money had and received.

213.    Frayman paid $65,000 to Miami Luxury and Mirmelli due to fraud, misrepresentation, imposition, duress, undue influence, mistake, and not knowing of the illegal nature of the Guest Agreement.

214.    Miami Luxury and Mirmelli are in possession of the $65,000, which in equity and good conscience ought to be refunded to Frayman.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's general, actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

## COUNT XIII
## PROMISSORY ESTOPPEL
### (Against Mirmelli and Miami Luxury)

215.    Frayman incorporates by reference and re-alleges paragraphs 1 through 112 as if fully set forth herein.

216.    This is a count for promissory estoppel.

217.    Through Sarah as their agent or apparent agent, Mirmelli and Miami Luxury promised Frayman that he would receive a full refund of his $65,000 wire if he left the Property.

218.    Mirmelli and Miami Luxury expected, or reasonably should have expected, this promise to induce action or forbearance on the part of Frayman.

219.    Frayman reasonably relied on this representation to his detriment.

220.    Frayman left the Property and sought alternative accommodations at great expense.

221.    Frayman has not received a refund of his $65,000.

222.    To the extent a contract was not formed when Frayman and Miami Luxury agreed to the terms of the refund, injustice can be avoided only by enforcement of the promise through the doctrine of promissory estoppel.

WHEREFORE, Plaintiff Frayman respectfully requests that the Court enter a final judgment against Defendants Mirmelli and Miami Luxury awarding Plaintiff's general, actual, compensatory, consequential, and punitive damages; costs; and pre- and post-judgment interest.

Dated: November 13, 2020                         Respectfully submitted,


                                                 **Andrew B. Boese**
                                                 Andrew B. Boese
                                                  Fla. Bar No. 824771

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Jeremy L. Kahn
  Fla. Bar No. 105277
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel:     305.740.1975
Email: aboese@leoncosgrove.com
Email: jkahn@leoncosgrove.com
*Counsel for Plaintiff*

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM